IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | | |
|---|---|---|
| CENTRAL BAPTIST CHURCH | : | |
| OF ALBANY GEORGIA INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CASE NO.: 1:16-CV-231 (LJA) |
| | : | |
| CHURCH MUTUAL | : | |
| INSURANCE COMPANY, | : | |
| | : | |
| Defendant. | : | |

## ORDER

Before the Court is Plaintiff Central Baptist Church of Albany's Motion to Compel. Doc. 31. Plaintiff's Complaint alleges breach of contract and bad faith against its insurer, Defendant Church Mutual Insurance Company, and also prays for attorney's fees under O.C.G.A. § 33-4-6. Doc. 1 at 8-13. The Complaint alleges that a hail and wind storm that occurred on December 23, 2014, caused "substantial damage and associated water intrusion to the buildings and structures located on the Insured Premises [ ]. As a result of the [l]oss, the buildings and structures located on the Insured Premises suffered direct physical loss covered by the terms of the Policy." Doc. 1 at 3. A dispute arose as to the amount of the loss to Plaintiff's property. On March 5, 2015, Plaintiff contacted Defendant to express dissatisfaction with the $1,302.99 (Plaintiff's amount of loss as determined by Defendant minus Plaintiff's $1,000.00 deductible) claim payment Defendant made to Plaintiff. Docs. 31-1 at 3; 36 at 7. Defendant estimated the loss at $2,302.99, while Plaintiff estimated the loss at more $1 million. Doc. 1 at 4. On January 20, 2016, Plaintiff's agent sent Defendant a report and a $1,014,481.47 repair estimate. Docs. 36 at 10; 31-1 at 4. On February 5, 2016, at Defendant's direction, Steve Hall inspected Plaintiff's property. Doc. 36 at 11. On March 16, 2016, Defendant declined to participate in the appraisal process with Plaintiff. Doc. 36 at 11. Plaintiff alleges Defendant officially denied its claim on November 15, 2016. Doc. 1 at 7.

Plaintiff seeks to compel Defendant or its agents to disclose "all relevant communications and reports [including a file prepared by a Mr. Hall] that were generated prior to [Defendant] officially denying [Plaintiff's] claim," or at "a minimum, . . . all relevant communications and reports made prior to [Defendant] officially declining [Plaintiff's] request for appraisal." Docs. 31-1 at 7; 36 at 11. Alternatively, Plaintiff seeks an "*in camera* review of these documents be conducted so that the Court can determine whether these documents were produced in the ordinary course of insurance business or in anticipation of litigation." Doc. 31-1 at 7, 19. Further, Plaintiff seeks "*in camera* review of certain documents [Defendant] claims to be privileged by the attorney-client privilege . . . to determine whether or not the communications were made to facilitate the rendition of legal services or if they were made in the ordinary course of insurance business." Doc. 31-1 at 19-20. Plaintiff "also asks this Court to compel [Defendant's] witnesses to appear for another round of depositions to answer questions regarding the withheld documents and for [Defendant] to pay the fees and expenses associated with such." Doc. 31-1 at 20. Finally, Plaintiff seeks costs and attorney's fees for its Motion pursuant to Federal Rule of Civil Procedure 37. Doc. 31-1 at 20.

In its Response, Defendant contends that: "[T]he documents Plaintiff seeks are protected under Fed. R. Civ. P. 26(b)(3) as they contain protected work product. Likewise, the documents were prepared in anticipation of litigation. Moreover, under no circumstances can Plaintiff show a 'substantial' need" for the requested material. Doc. 36 at 3. Defendant also argues that their consultant, Mr. Hall, is a non-testifying consultant or expert whose communications are protected under Fed. R. Civ. P. 26(b)(4)(D)(ii). Doc. 36 at 3.

**A. The Work Product Doctrine**

"[T]he scope of protection provided by the work product doctrine is a procedural question and thus governed by federal as opposed to state law in a diversity action." *Camacho v. Nationwide Mut. Ins. Co.*, 287 F.R.D. 688, 694 (N.D. Ga. 2012). "Rule 26(b)(3)(A)(ii) protects from discovery documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) unless the requesting party shows

that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." *Id.* (citation and punctuation omitted).

> Insurance claim files generally do not constitute work product in the early stages of investigation, when the insurance company is primarily concerned with deciding whether to resist the claim, to reimburse the insured and seek subrogation . . . or to reimburse the insured and forget about the claim thereafter. . . . [C]laim files straddle both ends of this definition, because it is the ordinary course of business for an insurance company to investigate a claim with an eye toward litigation. Once litigation is imminent, however, the claims investigation file is maintained "in anticipation of litigation" and its contents are protected by the work product doctrine.

*Id.* (same). Thus, in applying Rule 26(b)(3), a Court's "first task is to determine which documents were produced 'in anticipation of litigation.' For documents that were produced in anticipation of litigation, the second issue is whether [a movant] can show 'substantial need' and an inability to obtain the materials by other means." *Underwriters Ins. Co. v. Atlanta Gas Light Co.*, 248 F.R.D. 663, 667 (N.D. Ga. 2008). "Even as to documents for which [a movant] can show substantial need, documents containing the 'mental impressions, conclusions, opinions, or legal theories of an attorney or other representative must' receive additional (if not complete) protection. *Id.* (citation and punctuation omitted).

Here, Plaintiff argues that the claim file and other documents withheld are not covered by the work product doctrine because they were not produced in anticipation of litigation; or, in the alternative, that because Plaintiff cannot prove its bad faith claim without these documents, Plaintiff has shown substantial need for the requested material. After a review of the briefing on this Motion, it is clear that Defendant prepared certain documents in anticipation of litigation at least beginning after March 5, 2015, the date Plaintiff, "[o]utraged," contacted Defendant "unhappy" about the claim payment Defendant made to Plaintiff. Docs. 31-1 at 3; 36 at 7. Thus, absent substantial need, any documents Defendant created after March 5, 2015, are covered by the work-product doctrine and are privileged.

An analysis under Rule 26(b)(4)(D)(ii) warrants a similar conclusion. This rule prohibits discovery from non-testifying experts retained in anticipation of litigation, except in certain exceptional circumstances. Fed. R. Civ. P. 26(b)(4)(D)(ii). Rule 26(b)(4)(D) only

3

protects against the disclosure of information created or learned by Mr. Hall while "working with Defendant's attorneys in preparing for and litigating claims and defenses in this case. Excluded from the protection of the rule is information Mr. [Hall] created or learned . . . prior to Defendant retaining him as an expert." *Marlin VI Princess Deep Sea Fishing, LLC v. N. Assurance Co. of Am.*, 2014 WL 12629776, at *2 (M.D. Fla. Jan. 6, 2014) (citation and punctuation omitted). "[T]he rule does not address itself to the expert whose information was not acquired in preparation for trial but rather because he was an actor or viewer with respect to transactions or occurrences that are part of the matter of the lawsuit." *Id.* (same). Here, Mr. Hall was retained after Defendant anticipated litigation on Plaintiff's claim. Thus, Plaintiff must show exceptional circumstances as to both its bad faith claim and its breach of contract claim to obtain the requested material.

Assuming for argument's sake that Plaintiff has shown substantial need with regard to its bad faith claim[1] to examine the claims file and other documents created in anticipation of litigation, it has not shown such a need with regard to the breach of contract claim. After consideration, a bifurcation of Plaintiff's bad faith claim from the underlying breach of contract claim until the latter is resolved preserves Defendant's rights under the work-product doctrine for the breach of contract claim by not permitting Plaintiff to rummage through Defendant's claims file by including an allegation of bad faith in its Complaint. This bifurcation also recognizes that Plaintiff may not be able to prove its bad faith claim without the claims file. *See Magnolia Bankshares, Inc. v. Fed. Ins. Co.*, 2014 WL 12703719, at *5 (S.D. Ga. Apr. 28, 2014) (noting that Federal Rule of Civil Procedure 42(b) provides that courts may order separate trial of separate claims).

### B. The Attorney-Client Privilege

"Whether documents are protected by the attorney-client privilege is a substantive issue governed by state law." *Camacho*, 287 F.R.D. at 691. Under Georgia law, "[t]he privilege

---

[1] "To prevail on a claim for an insurer's bad faith under O.C.G.A. § 33–4–6, the insured must prove: (1) that the claim is covered under the policy, (2) that a demand for payment was made against the insurer within 60 days prior to filing suit, and (3) that the insurer's failure to pay was motivated by bad faith." *Lawyers Title Ins. Corp. v. Griffin*, 691 S.E.2d 633, 636–37 (Ga. Ct. App. 2010) (citation and punctuation omitted). "Bad faith is shown by evidence that under the terms of the policy under which the demand is made and under the facts surrounding the response to that demand, the insurer had no 'good cause' for resisting and delaying payment." *Id.* (same).

generally attaches when legal advice is sought from an attorney, and operates to protect from compelled disclosure any communications, made in confidence, relating to the matter on which the client seeks advice." *St. Simons Waterfront, LLC v. Hunter, Maclean, Exley & Dunn, P.C.*, 746 S.E.2d 98, 103 (Ga. 2013). "In Georgia, the attorney-client privilege is to be narrowly construed." *Camacho*, 287 F.R.D. at 692. The burden is upon the party invoking the privilege to establish that a document is privileged legal advice and thus not subject to discovery. *See S. Guar. Ins. Co. of Georgia v. Ash*, 383 S.E.2d 579, 583 (Ga. Ct. App. 1989). This burden is met by "present[ing] a privilege log with specific reasons for claiming the privilege" to the Court. *Bank of Am., N.A. v. Georgia Farm Bureau Mut. Ins. Co.*, 2014 WL 4851853, at *4 (M.D. Ga. Sept. 29, 2014). In determining whether a document is protected by attorney-client privilege, courts in Georgia consider the totality of the circumstances. *Ash*, 383 S.E.2d at 583. However, "[i]*n camera* review is not appropriate merely because a party objects to the assertions of privilege. . . . [W]here there is a sufficient evidentiary showing that an issue exists regarding the application of [ ] privilege, the court must utilize its discretion as to whether *in camera* review is appropriate . . . ." *United States v. Davita, Inc.*, 301 F.R.D. 676, 681 (N.D. Ga. 2014), *on reconsideration in part*, 2014 WL 11531065 (N.D. Ga. May 21, 2014).

Here, while Defendant did not submit its privilege logs or an affidavit in Response to Plaintiff's Motion, Plaintiff attached the relevant portions of Defendant's privilege logs to its Motion. Docs. 31 & 36. Plaintiff, however, makes no specific argument as to why it believes certain documents were not privileged; rather, Plaintiff broadly speculates that such documents may have been made in the normal course of business. Doc. 31-1 at 20. Defendant has not carried its burden with regard to the invocation of the attorney-client privilege. The Court, however, is not inclined to engage in an *in camera* review absent a more particularized motion by Plaintiff and a response by Defendant. Accordingly, **within fourteen (14) days** of the issuance of this Order, Plaintiff shall file a supplemental motion with regard to the privilege log, and Defendant shall file a response **fourteen (14) days thereafter**. Plaintiff's request to compel Defendant to produce documents in the claims file or in the file created by Mr. Hall, after March 5, 2015, its request to have Defendant's

5

witnesses re-deposed with regards to the withheld documents, and its request for attorney's fees under Rule 37 are **DENIED without prejudice** to Plaintiff's right to refile this Motion as necessary after the resolution of Plaintiff's breach of contract claim.

It is further **ORDERED** that Plaintiff's breach of contract claim is **SEVERED** from Plaintiff's bad faith claim. The parties are instructed to proceed with discovery on the breach of contract claim according to the current discovery deadlines and to bear in mind that, given that some discovery on the bad faith claim has already been conducted, if discovery on Plaintiff's bad faith claim is needed after the resolution of the breach of contract claim, only a limited discovery period will be granted.

**SO ORDERED**, this 5th day of December, 2017.

          /s/ Leslie J. Abrams  
**LESLIE J. ABRAMS, JUDGE**  
**UNITED STATES DISTRICT COURT**